## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **ALI SAADE**<br>    Quartier Landreah, Commune Dixinn<br>    Conakry, Guinea | )<br>)<br>) |
| | ) |
| *Plaintiff,* | ) |
| | )    Case No. 1:24-cv-3229 |
| v. | ) |
| | ) |
| **LISA PALLUCONI, in her official capacity as**<br>    **Acting Director of the United States**<br>    **Department of the Treasury,**<br>    **Office of Foreign Assets Control**<br>    1500 Pennsylvania Avenue, NW<br>    Freedman's Bank Building<br>    Washington, D.C. 20220 | )    **COMPLAINT FOR**<br>)    **DECLARATORY AND**<br>)    **INJUNCTIVE RELIEF**<br>)<br>)<br>)<br>) |
| | ) |
| *Defendant,* | ) |
| | ) |
| and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT**<br>**OF THE TREASURY, OFFICE OF FOREIGN**<br>**ASSETS CONTROL**<br>    1500 Pennsylvania Avenue, NW<br>    Freedman's Bank Building<br>    Washington, D.C. 20220 | )<br>)<br>)<br>)<br>)<br>) |
| | ) |
| *Defendant.* | ) |

---

Plaintiff Ali Saade brings this Complaint for Declaratory and Injunctive Relief against

Defendants the United States Department of the Treasury's Office of Foreign Assets Control

("OFAC") and its Acting Director, Lisa Palluconi, and in support of his complaint alleges the

following:

## INTRODUCTION

1.    On June 17, 2024, Defendants issued a denial of Plaintiff's petition for administrative reconsideration which sought the rescission of his designation under Executive Order ("E.O.") 13224, as amended, and the removal of his name from OFAC's Specially Designated Nationals and Blocked Persons List ("SDN") List. In denying Plaintiff's petition, Defendants acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA") by failing to provide a reasoned explanation for their denial decision, providing only conclusory statements in support of their decision, and treating Plaintiff differently than other similarly situated parties.

2.    Notably, Plaintiff's petition for administrative reconsideration proposed remedial measures that, if adopted, would negate the basis for his designation. Significantly, however, Defendants only issued one questionnaire seeking information in connection with assessing the arguments in the petition for administrative reconsideration. While that questionnaire acknowledges that the petition proposed remedial measures, there were no questions in the questionnaire concerning the remedial measures that were proposed. Nevertheless, Plaintiff responded to OFAC's questionnaire in a timely and substantive manner

3.    On June 17, 2024, Defendants issued a denial to Plaintiff's petition for administrative reconsideration. Defendants' letter noticing the denial decision was generic and conclusory, lacking any kind of specific consideration of the information, arguments, and evidence provided in Plaintiff's petition.

4.    Notably, Plaintiff's petition for administrative reconsideration proposed remedial measures to negate the basis of his designation, and Defendants' denial letter states that Plaintiff's proposed remedial measures fall short for two reasons. First, because Plaintiff "failed to

demonstrate changes in circumstances." And second, because Plaintiff "failed to provide evidence to counter OFAC's finding" that he met the designation criteria under E.O. 13224, as amended.

5.    Defendants' denial letter failed to provide a reasoned explanation for their determination that Plaintiff's proposed remedial measures, if adopted, would not negate the basis for his designation. Moreover, Defendants' denial letter did not take any position with respect to those remedial measures, other than to acknowledge that they were offered.

6.    By rejecting Plaintiff's proposed remedial measures and request to enter into a Terms of Removal ("TOR") Agreement, Defendants treated Plaintiff differently from similarly situated parties who have engaged in Defendant OFAC's administrative reconsideration process. Indeed, Defendants have entered into TOR Agreements with other similarly situated parties based on similar terms as those proposed by Plaintiff. Defendants, however, failed to provide an explanation as to why they treated Plaintiff's proposal differently than those of similarly situated parties.

7.    In denying Plaintiff's petition and providing no reasoned explanation for that action, Defendants have acted arbitrarily and capriciously and abused their discretion in violation of the APA. To remedy Defendants' clear error and mitigate the ongoing harm caused by Defendants' unlawful actions, Plaintiff respectfully requests this Court's intervention.

## JURISDICTION AND VENUE

8.    This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

9.    This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. Rule 65.

10.    Venue is proper in the District of Columbia as this is the district in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. §§ 1391(b), (e).

## THE PARTIES

11.    Ali Saade is and was at all times relevant to this complaint a national of Guinea, Lebanon, and France, and a resident of Guinea. Plaintiff resides at Quartier Landreah, Commune Dixinn, Conakry, Guinea.

12.    Plaintiff is sanctioned pursuant to E.O. 13224, as amended, and his name is identified on OFAC's SDN List.

13.    Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. Defendant OFAC is responsible for maintaining and administering the SDN List. This includes by placing persons on and removing persons from the SDN List consistent with E.O. 13224, as amended, and the implementing regulations located at 31 C.F.R. Parts 501 and 594, the "Reporting, Procedures and Penalties Regulations" and the "Global Terrorism Sanctions Regulations," respectively. Defendant OFAC was responsible for designating Plaintiff under E.O. 13224, as amended, and for denying Plaintiff's petition for administrative reconsideration.

14.    Defendant Lisa Palluconi is the Acting Director of OFAC. In this role, Defendant Lisa Palluconi is responsible for overseeing and directing OFAC's operations, including the

adjudication of petitions for administrative reconsideration. Defendant Lisa Palluconi is sued in her official capacity.

## FACTUAL ALLEGATIONS

### A.    Defendant OFAC's Designation of Plaintiff

15.    On March 4, 2022, Defendant OFAC designated Plaintiff under E.O. 13224, as amended, for allegedly having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Hizballah, a person whose property and interests in property are blocked under E.O. 13224, as amended. Notice of OFAC Sanctions Actions, 87 FED. REG. 13,369 (March 9, 2022). As a result of his designation, Plaintiff's name was added to OFAC's SDN List.

16.    The legal consequence of Plaintiff's designation is that his property and interests in property within U.S. jurisdiction are blocked, and U.S. persons are generally prohibited from engaging in transactions or dealings with him. Moreover, persons who engage in certain transactions or dealings with Plaintiff risk exposure to sanctions themselves under E.O. 13224, as amended.

17.    Concurrent with the designation action, Defendant OFAC issued a press release that set forth certain factual allegations ostensibly related to its determination that Plaintiff met the criteria for designation under E.O. 13224, as amended. Specifically, the press release alleged that Plaintiff was a "prominent Lebanese businessmen with direct connections to Hizballah." Press Release, U.S. Dep't of the Treasury, Treasury Sanctions Hizballah Financiers in Guinea (March 4, 2022). Further, the press release alleged that Plaintiff initiated "money transfers from Guinea to Hizballah, transferring funds through Hizballah representatives in Guinea and Lebanon." *Id.*

18.    According to Defendant OFAC, Plaintiff "has a close relationship with designated Hizballah supporter Kassem Tajideen [] whom OFAC designated in 2009 for being an important financial contributor to Hizballah." *Id.* Defendant OFAC's press release also alleged that Plaintiff "was Tajideen's primary political contact in Guinea [and that he] made significant efforts to provide Tajideen with unrestricted access to corrupt members of the former Guinean administration at the highest levels and the rest of the Guinean government." *Id*. Further, Defendant OFAC alleged that Plaintiff "advised Tajideen on methods for making financial transfers to evade detection by regulators." *Id.*

19.    At no time have Defendants identified when these alleged activities occurred, nor who the purported Hizballah representatives in Guinea and Lebanon were that Plaintiff allegedly transferred money through, nor how those transfers were initiated or conducted.

### B.    Plaintiff's Petition for Administrative Reconsideration

20.    Defendant OFAC administers regulatory procedures by which persons blocked pursuant to its regulations and identified on the SDN List may seek their removal from the SDN List. *See* 31 C.F.R. § 501.807. Defendant OFAC's delisting procedures allow interested parties to request reconsideration of their designations, stating that such parties "*may* submit arguments or evidence that the person believes establishes that an insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply." *Id.* (emphasis added). Further, "[t]he sanctioned person also *may* propose remedial steps on the person's part, such as corporate reorganization, resignation of persons from positions in a blocked entity, or similar steps, which the person believes would negate the basis for the sanction." *Id*. (emphasis added).

21.    On September 3, 2022, Plaintiff submitted a petition for administrative reconsideration to Defendant OFAC seeking the rescission of his designation and the removal of

his name from the SDN List. This petition was made pursuant to Defendant OFAC's delisting procedures set forth at 31 C.F.R. § 501.807.

22.    In his petition, Plaintiff proposed several remedial measures which, if adopted, would negate the basis for his designation. These remedial measures addressed the basis for Plaintiff's designation by impairing his access to former members of the Guinean administration, and by providing transparency over his business operations and personal finances. Plaintiff also indicated that he is open to considering any additional terms or conditions that would merit the rescission of his designation under E.O. 13224, as amended.

23.    Plaintiff proposed these measures to address the concerns underlying Defendant OFAC's allegations. Notably, Plaintiff's petition for administrative reconsideration did not say that the allegations were not disputed, as Defendants' denial letter would later claim. Rather, the petition noted that Plaintiff did not make any representations regarding the validity of OFAC's allegations against him or the factual bases it relied upon to designate him.

24.    Specifically, Plaintiff proposed that he would resign from his position as Honorary Consul of the Republic of Guinea in Lebanon, and would refrain from serving in any government position in Guinea and Lebanon. This resignation and commitment to refrain from government employment would have permanently severed Plaintiff's ties with the government to which Plaintiff allegedly provided Mr. Tajideen access.

25.    Plaintiff also proposed to certify on an annual basis, for a period of five years, that he does not have any direct or indirect business dealings or transactions with Guinean government officials, including representatives or agents of the current or former Guinean administration.

26.    Further, Plaintiff proposed to certify on an annual basis, for a period of five years, that he does not have any relationship with, nor does he engage in any dealings or transactions

with any persons on the SDN List. Such certifications would certify underly penalty of perjury that Plaintiff does not have any direct or indirect dealings, relationships, or communications with Kassem Tajideen, Ibrahim Taher, or any other persons that Defendant OFAC has designated due to purported ties with Hizballah. Adopting this remedial measure would have ensured Defendants that Plaintiff was not facilitating financial transfers to Hizballah, or exposed Plaintiff to criminal liability if he made untruthful certifications.

27.     Plaintiff also proposed to inform Defendants of: (i) any entities that he owns or controls in the future; and (ii) any entities that he will be employed with and/or serve as a board member or advisor for in the future, within 60 days, for a period of five years. This commitment evidenced Plaintiff's willingness to transparently share information with Defendants pertaining to his compliance with U.S. sanctions and any TOR Agreement.

28.     In addition, Plaintiff agreed to submit to an independent financial audit of his personal finances and those of any companies he owns or controls in the future. This audit would have (i) identified any irregularities that may signify potential violations of sanctions, money laundering, fraud, or corruption-related laws or regulations; and (ii) ensured compliance with the measures identified in any eventual TOR Agreement.

29.     Further, Plaintiff proposed that he would respond to any questions from Defendants regarding the proposed remedial measures, or with respect to compliance with U.S. sanctions more broadly, within 60 days and included an agreement to meet with Defendants or the State Department in-person or virtually.

30.     Plaintiff also proposed that he would certify within five days of the end of each calendar quarter to Defendants for a five-year period beginning the day after his removal from the SDN List that he continues to adhere to any TOR Agreement. Accordingly, adoption of this

proposed remedial measure would have given Defendants a means of ensuring Plaintiff's compliance with the TOR Agreement.

31.     Finally, Plaintiff proposed that, in the event of a breach of a TOR Agreement memorializing these remedial measures, he would not contest any re-designation action arising from that breach for a three-year period. Notably, by proposing that his agreement to these remedial measures be memorialized in a TOR Agreement, Plaintiff was proposing to provide certifications and other representations to a United States federal agency such that those statements would be subject to criminal penalty if false.

32.     In exchange for implementing these proposed remedial measures, Plaintiff requested that Defendants rescind his designation under E.O. 13224, as amended, and remove his name from the SDN List.

33.     As noted in his petition, Plaintiff's proposed measures to resign from his position as Honorary Consul of the Republic of Guinea in Lebanon; refrain from serving in any government positions; and refrain from engaging in any business transactions with current or former Guinean officials would ensure that he does not have access to members of the former Guinean administration. Further, the petition argued that by agreeing to sever ties with SDNs and submit to regular independent financial audits of his personal finances and those of his companies in the future, Plaintiff would directly demonstrate that he is not engaged in initiating money transfers that could go to Hizballah or its representatives.

34.     Plaintiff explained that several of the remedial measures would also provide transparency over his activities and finances—both personal and those of his current and future companies. Indeed, Plaintiff's petition argued that Plaintiff was willing to offer Defendants extensive information and documentation so that Defendants could verify and monitor his

activities and ensure overall compliance with U.S. sanctions. The petition further contended that this information and documentation would ensure that Defendants have the means to both identify and trace his funds and business revenues and evidence that none of those funds are being distributed, directly or indirectly, to Hizballah. Moreover, Plaintiff offered to have independent third-party auditors verify such information, as well as ongoing activities to provide further assurances to Defendants that there are no additional compliance issues moving forward.

35.    In addition to the proposed remedial measures, Plaintiff's petition provided information regarding an investigation by the Guinean Public Prosecutor of the Magistrate Court of Kaloum into Defendant OFAC's allegations against Plaintiff. As part of that investigation, Plaintiff's petition noted that he was initially charged with money laundering, terrorist financing, and conspiracy and placed under judicial supervision as a result of the investigation and Defendant OFAC's allegations.

36.    The information contained in the petition noted, however, that on July 7, 2022 Plaintiff was cleared from the charges in the Guinean investigation, and the case was dismissed as the investigation did not uncover any truth to Defendant OFAC's allegations. Notably, the dismissal order—which was attached to the petition—found that Plaintiff ceased any interaction with Mr. Tajideen following Plaintiff's 2017 discovery that Mr. Tajideen was on the SDN List, and that there was no evidence of any financial transfers from Plaintiff to Hizballah.

37.    The petition was Plaintiff's first-time seeking delisting, and none of the arguments, information, and evidence in support of his petition were previously presented to Defendants and were thus new information before OFAC at the time the submissions were made.

38.    On September 8, 2022, Defendant OFAC acknowledged receipt of Plaintiff's petition for administrative reconsideration and assigned the matter the Case ID SDGT-28916.

C.    **Defendant OFAC's January 30, 2023 Questionnaire**

39.    On January 30, 2023, Defendant OFAC issued a questionnaire seeking information purportedly in connection with its consideration of Plaintiff's petition. Specifically, Defendant OFAC requested personal identifying information, information on Plaintiff's financial accounts, transactions, and business activities, as well as information regarding Plaintiff's personal and business relationships. Defendant OFAC requested that Plaintiff respond to the questionnaire within 90 days.

40.    On April 30, 2023, Plaintiff timely responded to Defendant OFAC's questionnaire and provided additional information and documentation responsive to its inquiries. This information included, for example, personal identifying information and documentation, a list of all his financial accounts, and a detailed accounting of Plaintiff's relationships with entities and individuals that Defendant OFAC inquired about in its questionnaire. Notably, Plaintiff provided extensive documentation of his account statements for each bank account over the span of five years leading up to the questionnaire response, amounting to hundreds of pages of information.

41.    Further, Plaintiff's response to Defendant OFAC's questionnaire detailed that Plaintiff does not have any current interest in any bank accounts, nor any entities.

42.    Plaintiff's response also noted that the lifting of the suspension of Plaintiff's status of Honorary Consul was recommended by the Conakry's Prosecutor General following the conclusion of the investigation into Defendant OFAC's allegations which did not reveal that such allegations were substantiated.

43.    Plaintiff's questionnaire response also noted that he was willing to meet with Defendants to answer any questions they might have.

**D.      Defendant OFAC's Disclosure of the Designation Administrative Record**

44.      On June 28, 2022, Plaintiff, through undersigned counsel, requested the administrative record underlying Defendant OFAC's designation of Plaintiff under E.O. 13224, as amended. Defendant OFAC acknowledged receipt of Plaintiff's administrative record request on June 29, 2022.

45.      On August 17, 2023, Defendant OFAC disclosed a redacted version of the administrative record, including an evidentiary memorandum evidencing the findings and conclusions Defendant OFAC relied upon in determining that Plaintiff met the designation criteria of E.O. 13224, as amended.

46.      The version of the administrative record disclosed by Defendant OFAC is almost entirely redacted.

47.      The unredacted portions of the disclosed version of the administrative record repeat the determination in the press release announcing Plaintiff's designation—i.e., that Plaintiff "materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Hizballah, a person whose property and interests in property are blocked pursuant to E.O. 13224."

48.      The disclosed version of the administrative record also mentions Mr. Tajideen in a footnote. That footnote identifies Tajideen as "an Africa-based Hizballah supporter and an important financial contributor to Hizballah [who] [a]t the time of his designation, [] had contributed tens of millions of dollars to Hizballah and ran cover companies for Hizballah in Africa with his brothers."

49.      Outside of Defendant OFAC's Press Release, nothing in the disclosed version of the administrative record provides Plaintiff with any indication of Defendant OFAC's factual basis

for determining that he meets the designation criteria under E.O. 13224, as amended. Indeed, every paragraph of the evidentiary memorandum presumably setting forth the factual findings underlying Plaintiff's designation was redacted in the disclosed version of the administrative record.

50.     Further, the exhibits in the disclosed version of the administrative record do not identify information evidencing how, or even alleging that, Plaintiff "materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Hizballah…"

51.     Notably, Defendant OFAC's Press Release is not identified as an exhibit in support of the evidentiary memorandum supporting Defendant OFAC's determination that Plaintiff meets the criteria for designation under E.O. 13224.

**E.      Defendants' Denial of Plaintiff's Petition for Administrative Reconsideration**

52.     On June 17, 2024, Defendants denied Plaintiff's petition for administrative reconsideration. In its letter noticing the denial action, Defendants stated that they "determined that [Plaintiff] has not submitted arguments or evidence establishing that an insufficient basis exists for" his designation.

53.     According to Defendants' denial letter, Plaintiff "failed to provide evidence to counter OFAC's finding that [Plaintiff] assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Hizballah." Moreover, Defendants noted that Plaintiff "does not dispute the factual basis of his designation and makes no representations regarding the validity of OFAC's allegations against him or the factual bases it relied upon to designate him."

54.     In addition, Defendants stated that Plaintiff "has not presented new information that diminishes the weight of evidence that originally provided a reason for OFAC to conclude that he

materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of Hizballah."

55.    Notably, Defendants did not state that they previously had Plaintiff's bank statements—which were turned over in response to Defendant OFAC's questionnaire—nor did their denial letter assess whether those bank statements demonstrated that Plaintiff initiated money transfer to Hizballah from Guinea, or through Hizballah representatives in Guinea or Lebanon.

56.    Further, OFAC does not assess the Guinean investigation's finding that Plaintiff ceased any interaction with Mr. Tajideen following his 2017 discovery that Mr. Tajideen was on the OFAC SDN List, nor the investigation's findings that there was no evidence of financial transfers from Plaintiff to Hizballah. Indeed, Defendants' denial letter, while stating that Defendant OFAC has sufficient derogatory information supporting Plaintiff's designation, fails to explain why they discounted the findings of the Guinean investigation, even if they do not have to abide by that tribunal decision. Moreover, Defendant OFAC's denial decision does not identify any findings that Plaintiff provides ongoing support to Hizballah, nor has communicated with Kassim Tajideen at any time since 2017.

57.    While Defendants claim to have considered one piece of evidence submitted by Plaintiff—i.e. that Guinean authorities investigated Defendant OFAC's allegations and cleared Plaintiff of wrongdoing—Defendants make no mention of the other evidence Plaintiff provided across several hundreds of pages of submissions. Indeed, Defendants neither acknowledge the extensive evidence Plaintiff provided, nor assess whether such evidence rebuts the allegations underlying Plaintiff's designation.

58.    Further, the denial letter merely states that Defendants "acknowledge[]" Plaintiff's proposed remedial measures but that the proposed measures "failed to demonstrate changes in

[the] circumstances that underlie [Plaintiff's] initial designation." In making this assertion, Defendants do not address how—given that following his designation Plaintiff no longer had any companies or bank accounts—he could initiate financial transfers to Hizballah. Further, Defendants did not provide any conclusion or finding that Plaintiff has any ongoing dealings with Kassem Tajideen.

59.     Defendant OFAC's regulations do not require that a petitioner establish that an insufficient basis exists for their designation or that the circumstances resulting in the designation no longer apply. Indeed, Defendant OFAC's delisting regulations state that parties "*may* submit arguments or evidence that the person believes establishes that an insufficient basis exists for the sanction or that the circumstances resulting in the sanction no longer apply." 31 C.F.R. § 501.807 (emphasis added). Further, "[t]he sanctioned person also *may* propose remedial steps on the person's part, such as corporate reorganization, resignation of persons from positions in a blocked entity, or similar steps, which the person believes *would* negate the basis for the sanction." *Id*. (emphasis added).

60.     These potential avenues to delisting are also reflected in public guidance published by Defendant OFAC. *See* U.S. Dep't of the Treasury, Filing a Petition for Removal from an OFAC List,      https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list.

61.     In addition to its failure to account for the information and evidence provided regarding Plaintiff's finances, the denial letter also does not contain any assessment of Plaintiff's argument that the proposed remedial measures, if adopted, would negate the basis for his designation. Instead, the denial letter, in a conclusory fashion, states that Defendants "acknowledge[]" them. Specifically, Defendants' letter does not state how those remedial

measures are insufficient to negate the basis of Plaintiff's designation or why Defendants determined that those measures, if adopted, would not negate the basis for his designation.

62.     For example, Defendants' denial letter does not address Plaintiff's offer to resign as Honorary Consul of the Republic of Guinea in Lebanon, refrain from serving in any government positions in Guinea and Lebanon, and refrain from engaging in any business dealings or transactions with current or former Guinean officials. Nor does the denial letter assess why such steps would not address Defendant OFAC's allegations that Plaintiff has access to members of the former Guinean administration and the rest of the Guinean government.

63.     Defendants' denial letter also does not address why Plaintiff's offer to submit to regular independent financial audits of his personal finances and those of his companies in the future would not address Defendant OFAC's allegations that Plaintiff initiates money transfers to Hizballah representatives.

64.     Finally, Defendants' denial letter did not assess the reporting requirements offered by Plaintiff that would allow Defendants to monitor his activities, ensure that the measures are faithfully implemented, and ensure that Plaintiff does not engage in sanctionable conduct in the future.

65.     Moreover, Defendant OFAC did not provide any assessment of the information contained in Plaintiff's questionnaire response, or why that information was insufficient to support Plaintiff's delisting.

### F.     Harm Suffered by Plaintiff

66.     Defendants' designation of Plaintiff—and Defendants' denial of Plaintiff's petition for administrative reconsideration—has caused substantial harm to Plaintiff personally,

professionally, and financially, damaging his reputation and upending his ability to conduct basic transactions to support his livelihood.

67.    Specifically, Defendant OFAC's designation action resulted in Plaintiff's imprisonment in Guinea during the pendency of a Guinean investigation into the allegations in Defendant OFAC's press release, as well as the seizure of his passports, the blocking of his Guinean bank accounts, and the surveillance of his home.

68.    Additionally, after Plaintiff's designation, he was refused medical treatment at a Beirut hospital, barred from purchasing a vehicle from an automobile manufacturer in Beirut, and had funds that were held in a personal account blocked by a Swiss financial institution.

69.    Further, the fact that Plaintiff's name remains on the SDN List has resulted in him losing access to the global financial system.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DENIAL OF PLAINTIFF'S PETITION FOR ADMINISTRATIVE RECONSIDERATION CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

70.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

71.    Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

72.    Pursuant to 5 U.S.C. § 555(e), prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in

connection with an agency proceeding. Such notice must be accompanied by a statement of the grounds for denial.

73. Defendant OFAC promulgates procedures by which parties subject to its sanctions can petition for reconsideration of their designation and for delisting from the SDN List. 31 C.F.R. § 501.807. Pursuant to OFAC's delisting procedures, a designated person may "propose remedial steps on the person's part . . . which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a).

74. Defendants' letter noticing the denial of Plaintiff's petition merely states that they "acknowledge" the remedial measures, rather than providing a reasoned explanation why Defendants determined that Plaintiff's proposed remedial measures, if adopted, would fail to adequately address the basis for Plaintiff's designation under E.O. 13224, as amended. Instead, Defendants' denial letter states that Plaintiff failed to provide sufficient evidence of an insufficient basis for the designation or a change in circumstances.

75. By failing to consider the arguments, information, and evidence Plaintiff provided in support of his petition for administrative reconsideration, Defendants acted arbitrarily and capriciously in violation of the APA.

76. By denying Plaintiff's petition without providing a reasoned explanation as to why Plaintiff's arguments, information, and evidence were insufficient, Defendants acted arbitrarily and capriciously in violation of the APA.

77. By providing only conclusory explanations for their determination involving a central factual dispute—i.e., whether Plaintiff's proposed remedial measures would negate the basis of his designation—despite Plaintiff's submission of considerable evidence in conflict with that determination, Defendants acted arbitrarily and capriciously in violation of the APA.

78.    By treating Plaintiff differently than similarly situated parties that were delisted pursuant to TOR Agreements based on similar terms as those proposed by Plaintiff, and by failing to explain why Defendants were treating Plaintiff differently than such similarly situated parties, Defendants acted arbitrarily and capriciously in violation of the APA.

79.    By requiring that Plaintiff demonstrate an insufficient basis for his designation and a change in the circumstances underlying his designation, Defendants acted arbitrarily and capriciously and contrary to their own regulations at 31 C.F.R. § 501.807, in violation of the APA.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Issue an order vacating Defendants' denial of Plaintiff's petition for administrative reconsideration, with instructions to Defendants to reconsider that denial and determine whether Plaintiff's proposed remedial measures—standing alone—if adopted would negate the basis of designation;

B.    Order Defendants to produce unclassified summaries of classified or otherwise privileged information contained in the administrative record, which—together with the unclassified version of the administrative record—apprises Plaintiff of the reasons for his designation and the denial of his petition for administrative reconsideration;

C.    Grant an award to Plaintiff of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

D.    Grant such other and further relief as the Court may deem just and proper.

Dated: November 15, 2024

Respectfully submitted,

*/s/ Erich C. Ferrari*
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*